# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYLVIA E. FARRINGTON,<br><br>*Plaintiff*,<br><br>v.<br><br>ALEJANDRO MAYORKAS,<br><br>Secretary of Homeland Security,<br><br>*Defendant*. | Civil Action No. 21-3240 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Sylvia Farrington is a former employee for the Federal Emergency Management Agency ("FEMA"), a subagency of the Department of Homeland Security ("DHS").  She was fired in 2015, but only after she filed two complaints with the Equal Employment Opportunity Commission ("EEOC")—one six years before her termination and one two years prior—alleging claims of race and sex discrimination against her employer.  Asserting unlawful retaliation for filing EEO complaints, plaintiff has now sued the DHS Secretary, Alejandro Mayorkas, in his official capacity, under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.  Defendant moves to dismiss, claiming that plaintiff failed to allege sufficient facts to plausibly infer that she was fired because of her prior protected EEO activity. For the reasons below, defendant's motion to dismiss is granted without prejudice.

## I.     BACKGROUND

The relevant factual and procedural background is summarized below.

### A.  Factual Background

1

Plaintiff began working for the FEMA in 1996, Am. Compl. ¶ 1, ECF No. 17, and, in 2005, was dismissed from her position as Branch Chief in Orlando, Florida, *id.* ¶¶ 15-16. She successfully complained to the EEOC, alleging discrimination based on race, sex, and retaliation for prior protected activity, *id*. ¶ 16, resulting in an Administrative Law Judge ("ALJ") award of "numerous remedies, including backpay, compensatory damages, and that she be returned to her position within 60 days" of the order, *id.* ¶ 17. Despite the ALJ's order, DHS did not return plaintiff to her old position as Branch Chief but instead demoted her to "Trainee" status, "thrust[ing]" her into financial hardship in the process. *Id.* ¶ 19-20.

Plaintiff's luck went from bad to worse. In August 2012, plaintiff's credit check for a government travel credit card returned an outstanding debt of $65,000 to Chase Bank. *Id.* ¶¶ 21-24. That same month, DHS personnel sent plaintiff a letter, "requesting information regarding an 'issue of concern' in her credit report" regarding that debt. *Id.* ¶ 24. Plaintiff explained that the debt was a result of both unlawful business practices by Chase Bank and financial hardships caused by DHS. *Id.* ¶¶ 25, 28. Sometime in 2012, her debt with Chase Bank was resolved in plaintiff's favor. *See id.* ¶ 28. Plaintiff repeatedly notified the Department of Homeland Security that her debt had been resolved. *Id.* ¶¶ 29, 43. Nonetheless, on May 3, 2013, the Chief of DHS's Personnel Security Branch—who was aware of plaintiff's prior EEO activity—issued a "Final Fitness Determination" finding her "unfit for federal service." *Id.* ¶ 31. On August 12, 2013, plaintiff filed a formal complaint of discrimination with the EEOC. *Id.* ¶ 33.

Plaintiff remained employed until she was terminated on May 28, 2015 by her supervisor Johanna Pastrana. *Id.* ¶¶ 37, 40. Patricia Silva, a Human Capital Officer, allegedly advised Pastrana to immediately terminate plaintiff "without any prior warning(s) or other progressive notice(s) of sequential disciplinary actions." *Id.* ¶ 41. Pastrana and Silva were both allegedly

aware of her previous EEO activity.  *Id.* ¶¶ 39, 42.  Plaintiff appealed her termination on June 5, 2015, presenting evidence that "the discrepancy in her credit report was due to Defendant's refusal to abide by the" order issued by the ALJ, *id.* ¶ 43, but this termination appeal was denied on September 22, 2015, *id.* ¶ 44.  According to plaintiff, DHS "acted with malice, in bad faith, and in reckless disregard of Ms. Farrington's federally protected civil rights."  *Id.* ¶ 46.

### B.  Procedural History

On December 10, 2021, Plaintiff filed the instant lawsuit against DHS, alleging a Title VII violation for retaliation for prior EEO activity, Compl. ¶¶ 1, 43-44, ECF No. 1, and she filed an Amended Complaint on March 30, 2022, *see generally* Am. Compl.  Defendant timely moved to dismiss the Amended Complaint for failing to allege sufficient facts supporting plaintiff's claim that her termination was based on retaliation for protected EEO activity.  Def.'s Mot. to Dismiss, at 4 ("Def.'s Mot."), ECF No. 19.  With the parties having completed their briefing, defendant's motion is now ripe for resolution.

### II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *VoteVets Action Fund v. McDonough*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Consequently, "a complaint survives a motion to dismiss even 'if there are two alternative

explanations, one advanced by [the] defendant and the other advanced by the plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at 1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley, v. AstraZeneca UK Limited, et al.*, 22 F.4th 204, 210–11 (D.C. Cir. 2022). Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also id.* at 687 (explaining that a failure to allege any of a claim's elements beyond "a sheer possibility that a defendant acted unlawfully" results in a dismissal).

## III.    DISCUSSION

Title VII forbids an employer from retaliating against an employee because the employee engaged in protected activity by opposing unlawful employment practices or by bringing discrimination charges under Title VII. *See* 42 U.S.C. § 2000e-3(a); *see also Jeffries v. Barr*, 965 F.3d 843, 860 (D.C. Cir. 2020) (noting that Title VII restricts the government "from retaliating against employees for asserting their Title VII rights."). "Claims of retaliation under Title VII are governed by the same *McDonnell-Douglas* burden-shifting analysis applicable to discrimination claims[,]" *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). "Under this framework, [plaintiff] bears the initial burden of establishing a prima facie case for retaliation, which [s]he can meet by

showing '(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two.'" *Id.* (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)); *see also Allen v. Johnson*, 795 F.3d 34, 38–39 (D.C. Cir. 2015) (same); *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (same). Plaintiff has satisfactorily pled the first two elements of her retaliation claim: She engaged in protected activity by filing an EEO complaint, and she was subject to an adverse personnel action when she was eventually fired.  *See Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).

Defendant's sole contention is that plaintiff cannot plead the third element of her retaliation claim, namely that DHS fired her because of her protected EEO activity.  Def.'s Mot. at 4.   Even if those responsible for dismissing plaintiff knew of her prior EEO activity and failed to give her warnings prior to her termination, defendant argues that plaintiff has not satisfied her burden because (1) mere knowledge is insufficient to support a plausible inference of retaliation, particularly considering the significant time gap between plaintiff's protected activity and the adverse action; and (2) a failure to issue prior warnings evinces retaliation only if it violates an employer policy.  *Id.* at 4–6.  Defendant is correct.

For starters, a plaintiff must state allegations beyond the employer's mere knowledge of a protected activity.  *See, e.g., Brown v. Mills*, 674 F. Supp. 2d 182, 197 n.8 (D.D.C. 2009) ("[M]ere knowledge of . . . protected acts is not sufficient to allow a jury to infer that [the] acts were motivated by retaliation."); *Barry v. U.S. Capitol Guide Bd.*, 636 F. Supp. 2d 95, 106–07 (D.D.C. 2009) ("[T]he plaintiff must submit proof beyond mere knowledge about protected activity and speculation that [defendant] harbored retaliatory animus[.]"); *see also Iyoha*, 927 F.3d at 574 (explaining that "weak evidence of temporal proximity to show that the [defendant's] decisions were motivated by a desire to retaliate against [the plaintiff] . . .  does not, without more, raise an

inference of retaliation").  "[P]ositive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine," *see Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007), and a lengthy gap between the protected activity and termination also weakens support for causation, *see Holbrook*, 196 F.3d at 263 (explaining that the plaintiff must show both that the employer had knowledge of the protected activity and that the adverse action took place shortly thereafter); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (holding that "two and one-half months" of a gap between the protected activity and termination is not sufficient for a retaliation claim).

As in *Brown v. Mills* and *Barry v. U.S. Capitol Guide Board*, the mere fact that Pastrana and Silva knew about plaintiff's prior EEO activity is not enough to show that she was terminated because of that activity.  Any plausible connection between her protected activity and her termination is further weakened because of the lack of temporal proximity: She filed her first and second EEO complaints six and two years prior to her termination, respectively, far longer than the two-and-a-half months that the D.C. Circuit deemed insufficient to plead an inference of causation in *Taylor v. Solis*.  *See also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (citing with approval cases holding three- and four-month gaps to be insufficient, and holding that an adverse action "20 months later suggests, by itself, no causality at all.").[1]

---

[1]       Plaintiff's reliance on *Casole v. Johanns,* 577 F. Supp. 2d 138 (D.D.C. 2008), *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7, ECF No. 20, is misplaced.  Although *Casole* looked past the fact of a five-year gap between when the plaintiff first filed his complaint and the defendant fired him, the court did so because the plaintiff was engaging in other EEO-protected activities close to his termination.  *Id.* at 140.  Plaintiff says her case is similar because her case "lagged on for years, not only due to the long EEOC process, but also appeals and subsequent lawsuits[,]" but she does not show when that legal process culminated in her Amended Complaint.  Regardless, even if her termination was proximate to the end of her administrative process, she has not offered additional evidence or facts to defeat the presumption that FEMA terminated her for a non-discriminatory reason.  *See Woodruff*, 482 F.3d at 530.

In opposition, plaintiff first asserts that she has satisfied her pleading requirements by pleading a bare, conclusory allegation of causation, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 5–6, ECF No. 20, but that flatly contradicts binding Supreme Court precedent. Plaintiff's reliance on cases like *Vance v. Chao*, which holds that a Title VII retaliation plaintiff may plead "causation simply by alleging that the adverse actions were caused by her protected activity[,]" 496 F. Supp. 2d 182, 187 (D.D.C. 2007) (citing *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991)), uses caselaw that predates the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*. Plaintiff must proffer facts that at least give rise to the plausible inference of causation, rather than just plead a naked and conclusory claim that causation is satisfied.

Next, plaintiff contends that the following factual allegations about DHS—(1) failing to restore her to her previous position as Branch Chief after she filed her initial EEO complaint, (2) subjecting her to an unwarranted credit inquiry, and (3) terminating her without prior warnings after she had resolved her debt—support a plausible basis to show she was fired because of her prior EEO activity. Pl.'s Opp'n at 5–6. On these facts alone, plaintiff's causation argument cannot stand.

The mere fact that FEMA "failed to return Farrington to her [former] position" as Branch Chief, and as she alleges the ALJ required, also cannot support an inference of causation because plaintiff cannot link the failure to reinstate her to her decision to file an EEO complaint.[2] Title VII retaliation claims follow a but-for causation standard, and it is axiomatic that a plaintiff cannot

---

[2]     Plaintiff's allegation that the ALJ directed FEMA to reinstate her to the position she previously held as Branch Chief is belied by the administrative record. Attach. A, Def.'s Mot. Dismiss Am. Compl., Decision & Order at 66, ECF No. 19-1 (explaining that FEMA was only required to place plaintiff in "a comparable managerial position"); *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018) ("Public records are subject to judicial notice on a motion to dismiss when referred to in the complaint and integral to the plaintiff's claim.").

satisfy that standard if the defendant would have taken the same adverse action absent the protected activity.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (quoting William Keeton et al., *Prosser and Keeton on Law of Torts* 265 (5th ed. 1984) ("[A]n action 'is not regarded as a cause of an event if the particular event would have occurred without it.'").  Plaintiff's suggestion that her first EEO complaint led to her demotion, which led to her financial difficulties, which then led to her decision to take out a large loan, which in turn caused her firing, requires too many logical leaps to support an inference of causation.  She cannot plausibly plead that her termination would not have happened were it not for her protected EEO activity.

Plaintiff's reliance on the fact that she did not receive prior warnings before her termination is no help to her either.  Unless the employer has a policy that requires warnings for termination, the lack of prior warnings also does not support a plausible inference of retaliation.  *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) ("Rand's reliance on CFI's policy is misplaced because it does not state or imply that CFI is obliged to communicate problems before it decides to discharge an employee."); *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1291 (10th Cir. 2013) (cleaned up) ("[W]here progressive discipline is entirely discretionary, and the employer did not ignore any established company policy in its choice of sanction, the failure to implement progressive discipline is not evidence of pretext.").  Nowhere does plaintiff plead that DHS has a policy of warning its employees that an outstanding debt may prompt termination, so a reasonable jury could not necessarily infer that DHS deviated from a typical practice of issuing disciplinary warnings in the context of her termination.

Plaintiff makes three additional arguments, but none are persuasive to avoid dismissal. First, she says that FEMA unfairly raised concerns about her debt on her credit report, particularly considering that her bank violated North Carolina law when issuing that debt and engaged in

8

"unfair and unlawful predatory lending practices" when doing so.  Pl.'s Opp'n at 7; *see* Am. Compl. ¶¶ 25, 28.  Second, she argues that the bank ultimately resolved the matter in her favor, so her termination from FEMA must have been pretextual.  Pl.'s Opp'n at 6; *see* Am. Compl. ¶¶ 24-30.  Third, she claims that she was "promptly terminated in 2015" after "there was a change in her supervisors."  Pl.'s Opp'n at 7; Am. Compl. ¶¶ 37, 40.

As to the first argument, even if plaintiff's bank broke state law in issuing the debt to her, she provides no facts to suggest that FEMA's concerns about her debt were accordingly worthless or that the debt itself was invalid.  Nor was FEMA required to take plaintiff's explanations for granted when determining that she was unfit for service.  Her prompt termination after the supervisor switch, by itself, cannot support an inference of causation because an adverse action alone, "without more, is not proof of illegal discrimination or retaliation."  *See Wiley v. Glassman*, 511 F.3d 151, 158 (D.C. Cir. 2007).  Even when viewed in their best light, plaintiff's allegations do not support the sufficiency of a retaliatory action for a protected activity.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff's Amended Complaint is dismissed without prejudice.  An Order consistent with this Memorandum Opinion will be filed contemporaneously.


Date: November 9, 2022


_____
BERYL A. HOWELL
Chief Judge